WEATHERBEE v. BYAM.

1. EVIDENCE — CIVIL-DAMAGE ACTION — INTOXICATING LIQUORS — HEARSAY.

In an action by a widow against liquor dealers and their bondsmen for selling intoxicants to her deceased husband whereby he was drowned while fishing, testimony of statements made by deceased concerning his intention to go fishing were not harmful error; the same facts being proved by competent testimony introduced by appellant.

2. SAME—TRIAL—CROSS-EXAMINATION.

The latitude and extent of cross-examination of defendants' witnesses is largely discretionary with the trial court.

3. INTOXICATING LIQUORS—UNLAWFUL SALES.

> In an action brought against saloon keepers for the wrongful sale of liquors to plaintiff's husband and his death therefrom, a count for unlawfully inducing the deceased to become addicted to the habit of becoming intoxicated, without alleging his death, was properly joined, and, being supported by competent evidence, raised a proper issue for the jury.

4. SAME — TRIAL — SPECIAL QUESTIONS — REQUESTS TO CHARGE — UNLAWFUL CONDUCT OF DECEASED.

> No error was committed by the trial court in refusing to submit to the jury a special question as to whether deceased formed an intent to fish with a net contrary to law, before he was under the influence of liquor, and in refusing to charge that if he met with his death while so engaged in illegal fishing the plaintiff could not recover.[1]

Error to Clinton; Searl, J. Submitted December 14, 1909. (Docket No. 72.) Decided April 1, 1910.

Case by Isabella K. Weatherbee against George R. Byam and others under the civil-damage act. A judgment for plaintiff is reviewed by defendants on writ of error. Affirmed.

*Lyon & Moinet* (*Allen P. Cox*, of counsel), for appellants.

*William M. Smith*, for appellee.

MOORE, J. Plaintiff brought this suit to recover damages against three saloon men, Byam, Bloss and McCarthy, and their bondsmen, under the civil-damage law. The declaration consists of four counts. The first, second, and third counts seek to recover upon the theory that plaintiff's husband, George C. Weatherbee, was a man in the habit of becoming intoxicated and was in fact intoxicated on the afternoon and evening of June 19, 1906, and that said defendant saloon keepers in person or by

---

[1]As to necessity, in order to support a recovery under civil-damage act, that the intoxication be the proximate cause of the injury, see note to *Bistline* v. *Ney* (Ia.), 13 L. R. A. (N. S.) 1158.

their clerks then and there sold and furnished him intoxicating liquors, and that as a result thereof, while intoxicated, he was drowned in Maple river on that night. The fourth count seeks to recover upon the theory that from May 1, 1906, down to and including June 19, 1906, the defendant saloon keepers sold and furnished liquors to said George C. Weatherbee, alleging that he was then and there a person in the habit of becoming intoxicated and was at such times intoxicated, and that—

"The said George C. Weatherbee on, to wit, the said days and dates above mentioned, became drunk and dazed, bewildered in mind, and wandered and staggered in, upon and about the public streets of the said village of Ovid in the said county of Clinton, and that he would often remain away from their said home until midnight and later before returning, and would thus deprive this plaintiff of rest and strength in watching, waiting, and taking care of him, her said husband, the said George C. Weatherbee, and that he would become and was during, to wit, all of said time, unable to attend to his business, which was neglected and injured because of the said intoxication caused by each of said defendants," etc.

This count does not allege the death of George C. Weatherbee, and does not make any claim for damages on account of his death.

Upon the trial of the case plaintiff produced and gave testimony tending to show the truth of the averments of the declaration. Upon the trial defendants produced and gave testimony tending to show that Weatherbee was not a man in the habit of becoming intoxicated on and prior to the date in question, and also that he was not intoxicated during that afternoon and evening; that prior to June 19, 1906, Weatherbee, at a time when he was perfectly sober, made an agreement with his brother-in-law to go fishing with a net in violation of law in Maple river on the night in question; that they fished in violation of law in pursuance of that agreement; that during all of the time they were so fishing and for several hours said Weatherbee conducted himself as he would ordinarily

when no question was raised that he was under the influ-
ence of liquor; that by accident he went into a deep hole
while fishing and was drowned; and that any liquors he
drank prior thereto did not in any way cause or contribute
to his death.

The trial court submitted the case to the jury upon all
of the counts, and the jury returned a general verdict of
$2,800 in favor of plaintiff. Defendants bring the case to
this court on writ of error, and assign 142 assignments of
error. It is manifest that no such number of errors could
have been committed going to the merits of the case. It
is also manifest that it is not practicable to discuss each of
these assignments of error. Some of them relate to the
admission of testimony, others to the conduct of counsel,
others to the cross-examination of witnesses, others to the
exclusion of testimony offered on the part of defendants,
others to the refusal of the court to direct a verdict in fa-
vor of defendants on the fourth count, and in permitting
the jury to render a general verdict upon all of the counts
in the declaration, others to the charge of the court as
given, others in the refusal of the court to charge as re-
quested, others in relation to the misconduct of coun-
sel in instructing the jury how to answer one of the spe-
cial questions submitted to the jury, and in not respecting
the ruling of the court, and in using prejudicial language
in discussing such special questions. All of these groups
of assignments have been examined with care, but we shall
confine our discussion to those which seem important. A
quotation from the charge of the court at this point will
be helpful. Among other things stated by the court is
the following:

" It is the claim of the plaintiff that she was married to
George C. Weatherbee in 1900, and that she was living
with him as his wife from that time up to the time of his
death, which occurred on June 20, 1906, and that during
their married life she had received her support from her
husband and was receiving support from him when his
death occurred.

" She further claims that on June 19, 1906, her husband

was a person in the habit of getting intoxicated, and that
during the evening of said day he was intoxicated at the
village of Ovid. She further claims that from on or about
May 1, 1906, to June 20, 1906, the defendant Byam was
engaged in the business of selling spirituous, malt, brewed,
fermented, and vinous liquors at retail in the village of
Ovid, and was the proprietor of a saloon there where in-
toxicating liquors were sold, and that he was carrying on
said business under a statute of this State, and that in
compliance with this statute he had given the bond pro-
vided for by law, with the defendants Voorheis and Gris-
tock as his bondsmen; and that defendant Bloss was dur-
ing said time engaged in the same business in Ovid in
the same way, with defendants Hicks and Duncan as his
bondsmen; and that defendant McCarthy was during
said time engaged in the same business in Ovid in the
same way, with defendants Hicks and Duncan as his
bondsmen, and that each of these three principal defend-
ants, Byam, Bloss, and McCarthy, was operating and
conducting a saloon of his own in Ovid, and that she
makes the other defendants, the bondsmen, parties, be-
cause they are sureties upon the bond; and she further
claims that on June 19, 1906, while defendants Byam,
Bloss, and McCarthy were so operating their respective
saloons and while her husband was a person in the habit
of getting intoxicated, and while he was intoxicated,
each of these principal defendants, Byam, Bloss,
and McCarthy, either by themselves or by their
several clerks, agents, and servants, sold, furnished,
and delivered to her husband at their respective saloons
intoxicating liquors, which liquors her husband then and
there drank, and that he became and was intoxi-
cated on that evening, and that this intoxication
was either caused or contributed to by the liquors
furnished by each of these saloonkeepers, and that
the plaintiff saw her husband in an intoxicated
condition during the evening of the 19th, and that after-
wards and early on the morning of the 20th, while her
husband was fishing in Maple river near the bridge just
south of the village of Ovid, he lost his life by drowning,
and that he was a good swimmer and would not have
been drowned but for the fact that he was then and there
in an intoxicated, dazed, and helpless condition caused by
his intoxication, and that because of such intoxication he
was helpless to a certain extent while in the water, and

unable to swim or otherwise save himself as he would have been providing he had been in the possession of his full faculties and not in any manner enfeebled or rendered to any degree helpless by said intoxication, and that it was his intoxication, caused or contributed to by said liquors furnished by these three principal defendants, which caused his death. She further claims that she was notified of her husband's death shortly after it occurred, and that she went to the river at about the time his body was taken out of the water and saw him there dead, and that by reason of his intoxication and death she has been injured and damaged in her means of support and has suffered injury to her feelings and has been humiliated, and that her husband has become wholly lost to her and that she has otherwise been injured and damaged, which damages she claims she is entitled to recover against the defendants here.

"The defendants admit that these three principal defendants, Byam, Bloss, and McCarthy, were engaged in the business of selling liquors as claimed by the plaintiff, and that the other defendants are sureties on the bonds as stated in her claim, but they each deny that they or any of them sold, furnished, or any way by themselves or their or any of their servants, agents, or employés, delivered any intoxicating liquors unlawfully to George C. Weatherbee on June 19th or any other time, and that they and each of them claim that he was not a person in the habit of getting intoxicated and was not intoxicated at the time any liquors were furnished him on June 19th, by any of these three principal defendants, and the defendant McCarthy and his bondsmen claim that no liquors at all were furnished to George C. Weatherbee on June 19th by McCarthy or any one in his saloon, and that Weatherbee did not procure any liquors at McCarthy's saloon or in any way from McCarthy or from any agent, servant or employé of him at any time, which contributed in any degree to the intoxication of Weatherbee on the 19th and 20th, if he was so intoxicated. Defendant Byam admits that certain liquors were furnished Weatherbee at his saloon on the 19th, but he says these were lawful sales made when Weatherbee was not a man in the habit of getting intoxicated and made while he was not in fact intoxicated. Defendant Bloss admits that certain liquors were furnished Weatherbee at his saloon on the 19th but he claims that these were lawful sales made when Weatherbee was

not in the habit of getting intoxicated and when he was not in fact intoxicated. All the defendants claim, as I understand their claim, that Weatherbee was not intoxicated at any time on the 19th or on the 20th up to the time of his death, and they claim that his death was not caused by any intoxication, and that in fact he did not drown, but his death was caused by heart disease or heart failure or in some other manner by which death overtook him while in the water suddenly in some other manner other than from drowning, and that even if you should find that his death was caused by drowning, yet that the drowning was not in any manner caused or contributed to by intoxication, and they all claim that Weatherbee had before he drank at all on June 19th and when he was sober and on the day before, if I remember correctly, formed the intent to fish with a net on this river on this night in question, and that he was so fishing contrary to law with a net at the time he met his death, and therefore that he cannot recover no matter what caused his death.

"I charge you that defendants Byam, McCarthy, and Bloss were from May 1, 1906, up to and including June 20, 1906, engaged in a lawful business, and that under the law they had as much right to conduct their respective places of business and sell liquors at retail as any person has to engage in any other lawful business in this State, such as engaging in the business of selling groceries, meats, dry goods, clothing, or anything of that kind. It was lawful for these liquor dealers to sell intoxicating beverages during this time in question providing that such sales were not made in violation of the statute, and if sales were made in violation of this statute that I have spoken of, then in certain cases the liquor dealers are liable for the damages which may result from such sales. In this case we are concerned with no questions touching unlawful sales of liquor except sales to a person in the habit of getting intoxicated and sales made when a man is in fact intoxicated. You cannot base any verdict in this case upon sales made after hours, or in fact any sales or furnishing of liquor except such, if any, as were sold or furnished George C. Weatherbee on June 19th, either at the time when he was a person in the habit of getting intoxicated or at a time when he was in fact intoxicated. * * * In other words, gentlemen of the jury, there are only two kinds of unlawful sales of liquor for you to consider here, if you find any unlawful sales of

liquor made at all.   I have mentioned them to you—sales made to a person when he is intoxicated, and sales made to a person in the habit of getting intoxicated.   If you find no unlawful sale of either one of those two kinds, then there can be no recovery here upon the part of the plaintiff.   If you find that any intoxicating liquor was sold or furnished by any one or more of these three principal defendants, Byam, Bloss, or McCarthy, or by any of their respective servants, agents, or employés, and by that I mean any one who tended bar for them, to George C. Weatherbee on June 19th at a time when he was a person in the habit of getting intoxicated, or at a time when he was in fact intoxicated, or when either or both these conditions existed, then I charge you that such sales would be unlawful, and it would make no difference whether the liquor dealer or his agent or either of them knew that Weatherbee was in the habit of getting intoxicated or that he was in fact intoxicated, the sale would be an unlawful sale whether they knew these things or not.   If you find that such unlawful sale as I have just been speaking about was made, and further find that Weatherbee drank the liquors so furnished and that this liquor caused or contributed to his intoxication, if you find he became intoxicated, then the plaintiff would be entitled to recover, provided she has shown that she suffered some damage by reason of such intoxication.   *   *   *

"If any one of these saloon keepers made an unlawful sale, one of the kinds of unlawful sales I have mentioned, either when he was intoxicated or when he was a man in the habit of getting intoxicated, to Weatherbee, on the 19th of June, then that of itself would entitle the plaintiff to recover, something for that, provided she has shown any damages by reason of it.   That would be independent of the matter of his death entirely, because she has a count in her declaration charging an unlawful sale and that she suffered some damages, but I charge you in that connection that she could not recover any damages in that case by reason of loss of support—that is, if you find—go that far only, and do not find upon the other things I am going to submit to you in regard to his death.   If you stop there, and simply found a sale, but did not find that his death was the result of a sale, in that case you could not find any damages because of loss of support, for that would not be the cause of the loss of her support, but if you find that she suffered any humiliation by reason of seeing him

intoxicated on that day, if you find he was intoxicated by reason of these unlawful sales, then she might recover some damages for that. Those damages would necessarily be very small, but it would be a matter for you to consider, but in that case recovery could only be had in case of an unlawful sale and intoxication caused or contributed to by reason of that unlawful sale.

"I further charge you, gentlemen of the jury, that in case you find that George C. Weatherbee came to his death by reason of his having been furnished intoxicating liquors by Henry L. McCarthy, George R. Byam, and William A. Bloss, and all of them, and that they all furnished him intoxicating liquors on June 19, 1906, either while he was in the habit of becoming intoxicated, or while he was intoxicated, you will pay no attention to the question as to which, if either, of said saloon keepers furnished him the most of such intoxicating liquor, and I charge you in that connection that if the liquor furnished by any of said saloon keepers contributed in any degree to the damage of plaintiff she would be entitled to recover against that saloon keeper and his bondsmen, the same as though he had furnished the liquor to George C. Weatherbee. The law does not attempt in such cases to apportion the damage according to the amount of liquor each saloon keeper sold, if any, and even though Weatherbee might have procured some of the liquor he had, if any, from persons other than the three saloon keepers sued in this action, yet the persons sued would be responsible for the whole injury if any injury was suffered by plaintiff if the liquor sold by them or either of them contributed in any degree to the intoxication of George C. Weatherbee. That, of course, you must take in connection with the rest of my charge, providing she has shown damages resulting from it. * * *

"If you find that Weatherbee died from heart disease or because death overtook him suddenly from any cause not connected with his intoxication, then in such case plaintiff cannot recover, but if you find by reason of such intoxication, if you find he was intoxicated, and this intoxication was caused or contributed to by liquors furnished by these principal defendants or any of them, that his death is due to the fact that he was intoxicated, and that it resulted from the fact that he was intoxicated, then such principal defendant or defendants who so furnished such intoxicating liquors to George C. Weatherbee,

and their bondsmen, are liable in this action, in that case, gentlemen, the same rule would apply that I explained to you a few moments ago, if they furnished some of the liquors, whoever furnished some of the liquors that contributed to make up his intoxication, would be liable, even though other of the liquors that made up the same intoxication were furnished by third parties.

"Evidence has been given here tending to show that Weatherbee and Broadbent had, before Weatherbee had drank any liquor on this occasion, arranged to go fishing in Maple river contrary to law on the night in question, and that they were breaking the law when Weatherbee's death occurred. It was unlawful to fish in the manner that the evidence tends to show that they were fishing in Maple river at the time in question. In other words, it was unlawful on June 19th and 20th to fish with a net in Maple river, and if you find that Weatherbee's death was caused solely because of the fact that they were fishing in the river with a net at the time of his death, and that the furnishing of this liquor had nothing to do with causing his death, then plaintiff cannot recover, but in order to find that his death was caused solely by his fishing in the river you must find that his death occurred independent of the result of intoxication brought about by the furnishing of this liquor, if such intoxication was brought about and such liquor was furnished. The bare fact that he was fishing in the river, even though this was contrary to law, would not prevent plaintiff from recovering, providing you find that what really caused his death was the intoxication, if you find such intoxication, or the results thereof, it would not be necessary for you to find that he was intoxicated to the extent at the time of his death that he was earlier in the night providing you find he was intoxicated at all. If you find that he was intoxicated at all at the time of his death or find that he was suffering from the results of intoxication, so that he was in a feeble or helpless condition, did not have the full use of himself, if he was unable to save himself as a result of that intoxication, when otherwise he would have saved himself but for such intoxication or the effects thereof, then you would be at liberty to find that his death was the result of such intoxication, but notwithstanding the fact that you may find that he was intoxicated on the night in question, if you should find that that intoxication had so far

worn off at the time of his death that it did not cause the death in question; then the plaintiff could not recover. In other words, the intoxication in question must have been the efficient cause of his death."

The charge was a very long one, but enough has been quoted to show the way in which the case was submitted. At the close of his charge the judge, turning to counsel, said:

"Now, gentlemen, if I haven't stated your claims fully, I will correct them in any way, or if there is anything else? If not, swear an officer."

The record does not disclose any response to this suggestion. Four special questions were submitted to the jury, which, with their answers, are as follows:

"(1) Was the cause of the death of George C. Weatherbee some other than drowning?
"A. No.
"(2) Were any intoxicating liquors unlawfully furnished to George C. Weatherbee by or in behalf of defendant Henry L. McCarthy on June 19, 1906?
"A. No.
"(3) Did George C. Weatherbee meet his death solely because he engaged in fishing in Maple river with a net in violation of the law?
"A. No.
"(4) Were any intoxicating liquors unlawfully furnished to George C. Weatherbee by or in behalf of defendant George R. Byam on June 19th, 1906?
"A. Yes."

A judgment was duly entered on February 1, 1908, in favor of plaintiff and against said defendants Byam, Voorheis, Gristock, Bloss, Duncan, and Hicks for said sum of $2,800, and plaintiff's costs to be taxed, and in favor of said defendant McCarthy and against said plaintiff of no cause of action, together with his costs to be taxed, said judgment being a general judgment. The plaintiff has not appealed.

The trial judge had an exceedingly difficult task before him during the entire progress of the trial. He did his

best to proceed in an orderly way. Counsel on both sides seemed to be more anxious to win a verdict than they were to aid the court in arriving at the merits of the controversy. Page after page of the record is taken up with objections, rulings and exceptions. It frequently occurred that after objection was made, overruled, and exception taken and the testimony was received, that at once a motion would be made to strike out the testimony, a ruling upon the motion, and an exception would follow. All this took time and incumbered the record unnecessarily. It may well be said that the method of trying this case will not be pursued in an orderly trial where counsel and court are endeavoring to reach a result which should be in harmony with justice and the law.

A large number of the assignments of error relate to the admission of testimony as to what deceased said about going fishing. It is said that testimony was hearsay and inadmissible. Even if this is true we do not see how it could be harmful error, as it appeared by defendants' own testimony that deceased did go fishing, and it was while he was fishing in the river, having waded therein for some time, that death came to him.

A large number of the assignments of error relate to the conduct of counsel. It is clear from the record that there was an apparent unwillingness on the part of counsel to acquiesce in the rulings of the court. This was not confined to counsel upon one side. However, when counsel transgressed, the court at once attempted to correct the conduct and to remedy any harm by instructions to the jury. It is not clear to us that counsel's side of the case was not harmed more than it was helped by the course pursued.

A large number of the assignments of error relate to the cross-examination of witnesses for defendants. It was the claim of plaintiff that these witnesses were unfriendly to the plaintiff and were friendly to defendants, and as to some of them that during the progress of the trial they visited the saloons of the defendants and drank liquors,

that some of the witnesses who had testified that deceased
was not intoxicated were vigorously cross-examined to
learn what they understood by drinking to excess, and by
intoxication.  A large latitude must necessarily be given
to the trial judge in the exercise of his discretion as to
how far and in what direction the cross-examination may
be pursued.  We are not satisfied this discretion was ex-
ceeded.  *Johnston* v. *Insurance Co.*, 106 Mich. 96 (64
N. W. 5); Rapalje on Law of Witnesses, p. 406; 3 Enc.
of Evidence, p. 873.

A group of assignments of error relate to the refusal of
the court to direct a verdict for defendants as to the fourth
count of the declaration.  Under the testimony shown by
the record we think this was not error.  *Bowden* v. *Voor-
heis*, 135 Mich. 648 (98 N. W. 406).

Did the court err in refusing to submit to the jury the
following question:

"Did George C. Weatherbee, at a time when he was
not under the influence of intoxicating liquors, form an
intent to fish in Maple river with a net in violation of law
on the occasion in question when he met his death?"

And in refusing to charge the jury as follows:

"I charge you that if you find that George C. Weather-
bee, at a time when he was not under the influence of in-
toxicating liquors, formed an intent to fish in Maple river
with a net in violation of law on the occasion in question
when he met his death, and further find that he met his
death when he was engaged in fishing in Maple river with
a net in violation of law in pursuance of the forgoing in-
tent, then the plaintiff cannot recover in this case."

We have already quoted from the charge of the court,
so that it will not be necessary to repeat what was said.
We have examined the authorities cited by counsel, and
find they are not in point or are distinguishable from the
case at bar.  Section 5398, 2 Comp. Laws, reads in part
as follows:

"Every wife, child, parent, guardian, husband, or
other person, who shall be injured in person or property,

or means of support or otherwise, by any intoxicated person or by reason of the intoxication of any person; or by reason of the selling, giving or furnishing any spirituous, intoxicating, fermented, or malt liquors to any person, shall have a right of action in his or her own name, against any person or persons who shall, by selling or giving any intoxicating or malt liquor, have caused or contributed to the intoxication of such person or persons, or who have caused or contributed to such injury, and the principal and sureties to the bond hereinbefore mentioned, shall be liable severally and jointly with the person or persons so selling, giving or furnishing any spirituous, intoxicating, or malt liquors, as aforesaid."

It must be remembered that this is not an action between the consumer of the liquor and the seller of it, but it is an action by the wife who claims that she has been injured in her means of support because of the death of her husband occasioned by his intoxication by reason of drinking intoxicating liquors furnished by defendants. The language of the statute is very broad and very simple. It has often been before the courts. The intoxicated man who is killed while walking upon a railroad track is ordinarily a trespasser, but that does not prevent a recovery upon the part of the wife, and the fact that deceased came to his death while unlawfully fishing does not deprive the wife of the right given her by the statute.

The trial judge in a long and troublesome trial so conducted it that we find no reversible error.

Judgment is affirmed.

MONTGOMERY, C. J., and OSTRANDER, HOOKER, and McALVAY, JJ., concurred.